NO. *B090064C*

| | | |
|---|---|---|
| **CHARLIE JAMES DIAL** | § | **DISTRICT COURT OF** |
| **Petitioner** | § | |
| **v.** | § | |
| | § | |
| **PARTNERSHIP FOR RESPONSE AND** | § | **ORANGE COUNTY, TEXAS** |
| **RECOVERY, et. al.,** | § | |
| | § | |
| **Respondents** | § | **JUDICIAL DISTRICT NO. _____** |

## ORDER SETTING A HEARING

In accordance with the provisions of Rule 202.3 of the Texas Rules of Civil Procedure, this

application is set for a hearing before this Court on the _2nd_ day of _March_,

2009, _9:00 Am_

_____

Judge Presiding

Signed this ___9___ day of ___Feb___, 2009



'09 FEB 10 A8:32

Vickie Edgerly
DISTRICT CLERK
ORANGE COUNTY, TEXAS

FILED
VICKIE EDGERLY

CERTIFIED COPY

State of Texas
County of Orange

   I, VICKIE EDGERLY, Clerk of the District Court in
and for Orange County, Texas, do hereby certify
that the above and foregoing is a true and correct
copy of the Original Hereof, as same was filed and
appears of record in my office.

   · Witness my official seal and signature of office
in Orange, Texas, this the __27__ day of __Feb__ A.D. __2009__

      VICKIE EDGERLY
     Clerk of District Court
    of Orange County, Texas
  by

    JANET GREENE

NO. B090064-C

| | | |
|---|---|---|
| **CHARLIE JAMES DIAL** | § | **DISTRICT COURT OF** |
| **Petitioner** | § | |
| v. | § | |
| | § | |
| **PARTNERSHIP FOR RESPONSE AND** | § | **ORANGE COUNTY, TEXAS** |
| **RECOVERY, et. al.,** | § | |
| | § | |
| **Respondents** | § | **163rd JUDICIAL DISTRICT** |

### PETITIONER'S BRIEF IN SUPPORT OF HIS PETITION FOR AN ORDER AUTHORIZING THE TAKING OF DEPOSITIONS IN ANTICIPATION OF LITIGATION

Facts

1.      Hurricane Ike hit Texas on September 13, 2008.  Housing along the upper Texas Gulf Coast was devastated, and entire neighborhoods were lost.  President Bush immediately declared Hurricane Ike to be a major disaster ("FEMA disaster Number 1791").  Under this declaration, the Federal Emergency Management Agency ("FEMA") was authorized to provide emergency assistance in thirty four designated Texas Counties, including Orange County.  According to its web-site, FEMA was expressly authorized to provide assistance to individuals in Orange County under its Individual and Household Program.  These authorizations triggered FEMA's ability under the Stafford Act to provide each eligible family with up to $28,800 in emergency assistance,[1] including direct financial assistance to individuals and families for emergency home repairs.[2]

2.      FEMA evaluates applications for home repair assistance, at least in part, through on-site inspections of the damaged homes.  These inspections are used to verify that the applicant's home was damaged by a declared disaster to such a degree that the applicant is

---

[1] 42 U.S.C. § 5174(h).
[2] 42 U.S.C. § 5174(c)(2).



1

DISTRICT CLERK
SCANNED


eligible for emergency home repair assistance under the Stafford Act. FEMA does not conduct these inspections itself, but instead has contracted with third-parties to perform the inspections. Respondent, The Partnership for Response and Recovery ("PaRR"), contracted with FEMA to conduct such inspections, and it has been actively doing so in Orange County for Texans whose homes were damaged by Hurricane Ike.

3.     The Stafford Act specifically allows FEMA to provide emergency home repair assistance for "…the repair of owner-occupied private residences, utilities, and residential infrastructure (such as a private access route) damaged by a major disaster to a safe and sanitary living or functioning condition.[3]" Thus, eligibility for assistance depends on whether the applicant's home is in a "safe and sanitary… condition." FEMA has a statutory duty to use "…criteria, standards, and procedures for determining eligibility for assistance…[4]" prescribed by the President, when determining whether or not an individual or household is eligible for emergency home repair assistance. The Stafford Act also requires FEMA to distribute home repair assistance to individuals and households "…in an equitable and impartial manner…[5]"

4.     The Texas Houser (a blog which tracks FEMA's response to Hurricane Ike) estimates that FEMA has so far denied about 52% of all applications by Texans seeking emergency assistance because of damage to their homes caused by Hurricane Ike. According to the Texas Houser, approximately 57% of these denials were based upon a finding of 'insufficient damage' following on-site inspections of the damaged homes. "Insufficient damage" is therefore the primary reason that FEMA has denied the majority of the applications for emergency assistance by Texans with damaged homes.

---

[3] 42 U.S.C. § 5147(c)(2).
[4] 42 U.S.C. § 5147(j).
[5] 42 U.S.C. § 5151(a).



5.     Like many affected Texans, Petitioner Charlie Dial ("Dial") applied to FEMA for emergency assistance on account of Hurricane Ike's damage to the home he owns and occupies. Mr. Dial's home was inspected by a PaRR inspector (see letter given to Mr. Dial by the inspector, attached as Exhibit A) to evaluate his eligibility for emergency home repair assistance. Like most Texans, Mr. Dial's application was denied. The only reason given by FEMA for this denial was that there was "Insufficient Damage" to Mr. Dial's home. FEMA did not explain the factual basis for this determination, nor did FEMA indicate what evidence, if any, might be submitted to overcome this result.

6.     The damages to Mr. Dial's home from Hurricane Ike rendered that home unsafe and unsanitary. He therefore believes that his home in fact meets the statutory level of damage required for eligibility. Mr. Dial cannot understand how FEMA or the PaRR inspectors could conclude otherwise unless: (1) FEMA's criteria, standards and procedures unlawfully conflict with the statutory requirements; and/or (2) the PaRR inspector failed to apply lawful criteria, standards and procedures, or else applied them in a wrongful, improper and possibly negligent manner.

7.     Unfortunately, FEMA's criteria, standards and procedures have not been publicly prescribed by the President, have not been published in the Federal Register, and have not been posted or otherwise publicized by FEMA. Furthermore, FEMA has actively and effectively resisted disclosing those criteria, standards and procedures in lawsuits brought to compel such disclosure.[6] This lack of access to FEMA's criteria and standards prevents applicants denied assistance from effectively appealing the denials because such an appeal can only be effectively pursued if the denied applicant can actually determine the reasons FEMA considered the damage to his home to be 'insufficient.' Consequently, FEMA has denied the Petitioner's emergency

---

[6] E.g. *La Union Del Pueblo Entero v. FEMA*; No. 1:08-cv-487; Southern Dist. Of Texas, Brownsville Division.

3

assistance application (as well as the applications of most Texans with Ike-damaged homes) for reasons: which have not been adequately explained; which cannot be verified, challenged or refuted by the applicant; which cannot be assessed for consistent, fair and equal application; and under circumstances which effectively destroy the right of appeal.

8.    Mr. Dial contemplates litigation against both FEMA and PaRR. He wants to take PaRR's deposition before filing suit in order to discover the criteria, standards and procedures for home inspections which PaRR used to perform the inspections. Discovery of these criteria and standards would prevent a failure or delay of justice, and the likely benefits of the deposition would outweigh the burden and expense of the deposition.

## Pre-Suit Depositions Under TRCP 202

9    The Texas Rules of Civil Procedure provide a process under which a deposition can be taken prior to actual litigation.[7]  "A person may petition the court for an order authorizing…" the pre-trial deposition of another to be used in an anticipated suit, or to be used to investigate potential claims.[8]  Under the Rules, the petition must be verified,[9] and must also (among other things) "…state the subject matter of the anticipated action…and the petitioner's interest therein.[10]"  The petitioner, however, does not need "…to expressly state a viable claim before being permitted to take a pre-suit deposition.[11]"

10.    An evidentiary hearing must be held on the petition no sooner than fifteen days following service of the notice of hearing upon the deponent and upon other parties with

---

[7] TRCP 202.

[8] TRCP 202.1.

[9] TRCP 202.2(a).

[10] TRCP 202.2(e).

[11] *City of Houston v. U.S. Filter Wastewater Group*, 190 S.W.3d 242, 245 (Tex.App.—Houston[1st Dist.] 2006).

4

interests[12] adverse to petitioner. From that evidentiary hearing, "…the court must order a deposition to be taken if, but only if, it finds that: (1) allowing the petitioner to take the requested deposition may prevent a failure or delay of justice in an anticipated suit; or (2) the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure.[13]"

## Conclusion

Petitioner Dial contemplates a suit against both PaRR and FEMA concerning the use and application of certain of FEMA's criteria, standards and procedures for eligibility. Although these criteria, standards and procedures have never been publicly disclosed, they are known to PaRR. Before filing suit, the Petitioner wants to depose PaRR concerning these criteria, standards and procedures. Not only would such a pre-suit deposition prevent a failure or delay of justice in an anticipated suit, but the benefits of allowing that deposition would greatly outweigh the burden and expense of the deposition. For these reasons, the Court should order that PaRR's deposition be taken.

Respectfully submitted,

Shimon Kaplan
State Bar No. 11095020

Mark J. Grandich
State Bar No. 08294850

Lone Star Legal Aid
1415 Fannin, Third Floor
Houston, Texas 77002
(713) 652-0077, ext. 1251
Fax (713) 652-3815
ATTORNEYS FOR PETITIONER

---

[12] TRCP 202.3(a).
[13] TRCP 202.4(a).

5



**Federal Emergency Management Agency**



Date  *10-1-08*

Hello,

My name is  *Dean Galloway*.  I am under contract to PaRR Inspections providing inspection services to the Federal Emergency Management Agency (FEMA). I am here to inspect the damages to your home and personal property caused by the disaster.

The inspection report I complete today is performed for the FEMA Individuals and Households Program (IHP). If you have applied for assistance from the Small Business Administration or the American Red Cross, an inspector for those programs may also visit your home.

Based on this inspection and the information you provided when you registered, the FEMA Individuals and Households Program will determine your eligibility for assistance. Shortly after your inspection, one or more letters will notify you whether you will be receiving assistance. These letters will explain your eligibility for the FEMA IHP. If you are to receive a grant, the letter will show the amount and how to use the funds provided.

Further, if you have been turned down for a loan from the Small Business Administration (SBA), this inspection report will be used to determine your IHP eligibility for a grant for transportation and/or personal property. You will be notified by mail whether you are eligible for assistance.

*Following is a list of frequently asked questions and answers that may be helpful.*

- *How will this inspection help my family?*
  This inspection will provide FEMA and the state with the information necessary to determine your eligibility to receive funds under IHP.

- *How long will this inspection take?*
  This inspection should not take any longer than forty-five minutes to complete.

- *How will the inspector evaluate any damage to my roof or under my home?*
  The inspector will observe the roof from the ground and the crawl space from an exterior vantage point for indication of damage that may affect the habitability of your home.

- *Is this inspection for a loan or for a grant?*
  This inspection is for a FEMA grant to help you with your emergency housing or personal property needs. If you were referred to the Small Business Administration for a low interest loan to restore your home or to replace personal properties, you must first complete their loan application. If you are *denied* the loan, the SBA will notify FEMA and the IHP for possible grant eligibility.

- *Can I get some help for my business losses?*
  The Small Business Administration has a commercial loan program which addresses uninsured damage to your business or other economic injury incurred as the result of the disaster.

- *Will FEMA pay for all my damages?*
  By regulation, the FEMA Individuals and Households Program (IHP) can address only your emergency repairs and needs. This program is not intended to fully restore your property to pre-disaster condition.

- *Will the inspector need to see receipts or photographs to verify my damages?*
  Generally, the inspector will NOT need to view receipts or photographs.



Rev. 11/1/02

**EXHIBIT A**

- *How does FEMA determine the amount of the award?*
  FEMA uses a nationally recognized pricing service similar to those used by building contractors that reflects the average cost of repairs in your area. Rental awards are based on the average rental cost for your area.

- *What type of assistance is available to my family?*
  You may be eligible for a grant to make emergency repairs to your home so that you and your family will not be displaced. If the repairs are of a serious nature, you may receive rental assistance allowing you to relocate to alternate housing until you are able to return to your home.

- *Can I use a FEMA rental check to make repairs to my home?*
  You may elect to use the FEMA rental check to make repairs to your home instead of renting alternate housing. If so, you may not be eligible for any additional rental assistance.

- *Do I have to hire a contractor to do the work?*
  You may elect to either hire someone to do the work or to do the work yourself. In any case you should keep all receipts.

- *What if I can't live in my home while the repairs are being made?*
  FEMA may be able to reimburse you for housing expenses incurred for short-term lodging.

- *Can I get help from FEMA if I have insurance?*
  FEMA cannot duplicate benefits you may receive from your insurance company. However, you may be eligible if there is a delay in the receipt of benefits or if your insurance does not meet all your disaster needs. If you have not already done so, please contact your insurance agent to file a claim.

- *Can the inspector inspect my neighbor's house now, too?*
  The inspector can only visit the families who have been assigned to him/her. You may refer anyone to apply for assistance by calling 1 800 621-FEMA (3362).

- *What happens next?*
  You should expect to receive a letter regarding your eligibility for FEMA's IHP within 7-10 days.

- *What if I don't agree with the results of the inspection?*
  All correspondence from the IHP will explain how you may appeal eligibility determinations.

- *When will I get my check if I'm eligible?*
  A check for any assistance will be mailed immediately following the eligibility letter. If you agreed to Electronic Funds Transfer (EFT) at registration, your funds would be deposited directly into your account at that time.

- *What if I have immediate emergency needs?*
  The Red Cross or other volunteer agencies may be able to meet immediate emergency needs for food, clothing, or lodging. You should contact the FEMA Helpline at 1 800 621-FEMA (3362) for information about any programs, which may provide emergency assistance.

- *Will FEMA send another inspector to view my property?*
  You may be randomly selected for a re-inspection as part of PaRR 's Quality Control program to help us evaluate the overall performance of our inspectors.

*If you have any additional questions, please ask me or call the FEMA Help Line 1-800-621 FEMA. Thank you.*

Rev 11/7/02

State of Texas
County of Orange

    I, VICKIE EDGERLY, Clerk of the District Court in and for Orange County, Texas, do hereby certify that the above and foregoing is a true and correct copy of the Original Hereof, as same was filed and appears of record in my office.

    · Witness my official seal and signature at office in Orange, Texas, this the _____ day of _____ 2009

VICKIE EDGERLY
Clerk of District Court
of Orange County, Texas
by _____

JANET GREENE

NO. B 09 0064-C

| | | |
|---|---|---|
| **CHARLIE JAMES DIAL** | § | **IN THE DISTRICT COURT OF** |
| Petitioner | § | |
| | § | |
| v. | § | |
| | § | |
| **PARTNERSHIP FOR RESPONSE** | § | **ORANGE COUNTY, TEXAS** |
| **AND RECOVERY** | § | |
| Respondent | § | |
| And | § | |
| **DEWBERRY & DAVIS, LLC** | § | |
| Respondent | § | |
| And | § | |
| **URS CORPORATION** | § | |
| Respondent | § | **JUDICIAL DISTRICT NO. _____** |

## IOLTA CERTIFICATE

I am the attorney of record in this cause for Petitioner, Charlie James Dial. I am providing free legal services, without contingency, due to my client's indigency. Lone Star Legal Aid is a program funded by the Interest on Lawyers Trust Accounts (IOLTA) program.

My client in this cause was screened for income eligibility under the IOLTA income guidelines, and was found to be eligible under these guidelines.

This Certificate is filed pursuant to Rule 145(c), Texas Rules of Civil Procedure.

Respectfully submitted,

*Shimon Kaplan*

**SHIMON KAPLAN**
State Bar No. 11095020

Lone Star Legal Aid
P.O. Box 2552
Beaumont, Texas 77704-2552
Tel: (409) 835-4971
Fax: (409) 839-8182

Attorney for Petitioner

Sworn to before me, and subscribed in my presence, this 5th day of February, 2008.

Notary Public, State of Texas



State of Texas
County of Orange
    I, VICKIE EDGERLY, Clerk of the District Court In
and for Orange County, Texas, do hereby certify
that the above and foregoing is a true and correct
copy of the Original Hereof, as same was filed and
appears of record in my office.
    · Witness my official seal and signature at office
in Orange, Texas, this the __ day of _____ 2009

        VICKIE EDGERLY
        Clerk of District Court
      of Orange County, Texas
    by
    JANET GREENE

## AFFIDAVIT OF INABILITY TO PAY COSTS

I.   My name is  CHARLIE JAMES DIAL. I am the Petitioner in this cause.

II.  My income, resources, and expenses are set out in the schedule below:

A.   Monthly Income:

|  | Amount: | Source or Description |
|---|---|---|
| 1) Public Benefits: | $ 1000.00 | SS |
| 2) Public Benefits: | | |
| 3) Net Employment: | | |
| 4) Other Income: | | |

B.   Number of Dependents:

_____ 0 _____

C.   Property:

1)   Cars or Trucks (Year/Make):

a) 1985 Mercedes _____ b) ___0___

2)   Checking and/or Savings Account:

Bank: MCT Credit Union _____ Amount:$ 1,000.00

3)   Cash: $ $ 20.00

4)   Other Property: (excluding homestead)

_____

_____



D.   Monthly Expenses:

Rent/Mortgage: $100.00

Food: $200.00

Car Payment: 0

Child Care: 0

Transportation: $150.00

Medical/Dental: 0

Insurance: 0

Utilities: $200.00

Clothing/Laundry: $50.00

Other: $200.00

E.   Debts and child support obligations (exclude house and automobile):

| Creditor: | Monthly Payment: |
|---|---|
| a. N/A | N/A |
| b. | |
| c. | |

III.   I am unable to pay the court costs in this cause.

IV.   I verify that the statements made in this affidavit are true and correct.

CHARLIE JAMES DIAL, Affiant

STATE OF TEXAS    §
COUNTY OF ORANGE    §

SUBSCRIBED AND SWORN TO BEFORE me, by CHARLIE JAMES DIAL, on this the __16th__ day of __January__, 2009.

LOU ANN CHISM
NOTARY PUBLIC IN AND FOR THE STATE OF TEXAS

LOU ANN CHISM
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
JAN. 24, 2012

DISTRICT COURT
ORANGE COUNTY TEXAS
CERTIFIED COPY

State of Texas
County of Orange

I, VICKIE EDGERLY, Clerk of the District Court in
and for Orange County, Texas, do hereby certify
that the above and foregoing is a true and correct
copy of the Original Hereof, as same was filed and
appears of record in my office.

· Witness my official seal and signature of office
in Orange, Texas, this the 27 day of ____ 2009

VICKIE EDGERLY
Clerk of District Court
of Orange County Texas
by _____
JANET GREENE

NO. *B090064C*

| | | |
|---|---|---|
| **CHARLIE JAMES DIAL** | § | **DISTRICT COURT OF** |
| Petitioner | § | |
| v. | § | |
| | § | |
| **PARTNERSHIP FOR RESPONSE AND** | § | |
| **RECOVERY,** | § | **ORANGE COUNTY, TEXAS** |
| Respondent | § | |
| | § | |
| And | § | |
| **DEWBERRY & DAVIS, LLC,** | § | |
| Respondent | § | |
| And | § | |
| **URS CORPORATION** | § | |
| Respondent | § | **JUDICIAL DISTRICT NO. _____** |

## PETITION FOR AN ORDER AUTHORIZING THE TAKING
## OF A DEPOSITION IN ANTICIPATION OF LITIGATION

Charlie James Dial respectfully petitions this Honorable Court, pursuant to Rule 202 of

the Texas Rules of Civil Procedure, for an order authorizing Petitioner to take the depositions of

the persons named in this Petition, for use in an anticipated law suit to be filed in the County of

Orange.

### I.
### Petitioner

Petitioner Charlie James Dial is an individual residing at 3763 Victory Circle, Orange,

Texas 77630.

### II.
### Deponent

The entity to be deposed is the Partnership for Response and Recovery ("PaRR"), which

currently has a contract with the Federal Emergency Management Agency ("FEMA") to inspect

the homes of individuals who apply to FEMA for emergency assistance.

DISTRICT COURT OF ORANGE COUNTY, TEXAS — CERTIFIED COPY

PaRR is a joint venture composed of: (1) Dewberry & Davis, LLC ("Dewberry"), which

is a limited liability company; and (2) URS Corporation ("URS") which is a corporation. The

members of this joint venture are located as follows:

> ### 1. Dewberry
>
> > Corp Service Company
> > Registered Agent For Dewberry & Davis, LLC
> > 701 Brazos St., Suite 1050
> > Austin, TX 78701
> >
> > Ronald L. Ewing, President
> > Dewberry & Davis LLC
> > 8401 Arlington Blvd.
> > Fairfax, VA 22031
> > (703) 849-0100

> ### 2. URS
>
> > CT Corporation System
> > Registered Agent for URS Corporation
> > 350 North St. Paul St.
> > Dallas, TX 75201
> >
> > Gary Jandegian, President
> > URS Corporation
> > 600 Montgomery St, 25th Floor
> > San Francisco, CA 94111
> > (415) 774-2700
> > (415) 398-1905 FAX

### III
### Facts

The Petitioner intends to use the requested deposition in an anticipated suit against, or

involving, PaRR.



IV.

The Petitioner is a resident of Orange County, Texas. His home and personal property were damaged by Hurricane Ike in September of 2008. The Petitioner applied to FEMA for home repair and personal property replacement assistance on account of obvious damage to his home and property. FEMA awarded him a nominal amount. Petitioner appealed that decision, asking for an adequate award to repair his home and replace his property.

V.

To evaluate his applications, FEMA arranged for inspections by PaRR to assess and to document the damage to the Petitioner's home and property. PaRR sent one of the inspectors it employs to conduct the inspection.

After FEMA received the report of the inspections of the Petitioner's home and property, FEMA denied his application for additional assistance. The only reason given by FEMA for this denial was that the original award was sufficient, without any explanation as to how or why the obvious and substantial damage to the Petitioner's home and property could be repaired with the nominal award. The Petitioner does not know, nor understands, how the inspection of his home and property could support that finding. The Petitioner strongly disagrees with this finding, and he anticipates litigation to challenge this finding.

VI.
The Anticipated Litigation

The subject matter of the anticipated suit concerns: (1) the existence and reasonableness of the tests, criteria and standards used to evaluate the amount of damage to a home and personal property; (2) the fair, consistent and equal application of such tests, criteria and standards; and

(3) whether the damages to Petitioner's home and property were appropriately and fairly evaluated.

### VII.

The Petitioner has an interest in the anticipated litigation:  because his home and property were damaged by Hurricane Ike; because he applied to FEMA for emergency assistance on account of that damage; because he received only nominal award; because his appeal was denied without any explanation; and because he believes that his home and property have been substantially damaged and eligible for substantial FEMA emergency assistance under any fair application of appropriate standards.

### VIII.

The following entity may have an interest adverse to the Petitioners' in the anticipated suit:

> Federal Emergency Management Agency
> 500 C Street S.W.
> Washington, D.C. 20472
> (800) 621- 3362
> (800) 827-8112 FAX

### IX.

This petition is filed in Orange County, Texas, where venue of the anticipated suit may lie.

### X.

The Petitioner asks the court to issue an order authorizing him to take oral deposition of the joint venture known as the Partnership for Response and Recovery (or of its constituents Dewberry & Davis, LLC, and URS Corporation).

XI.

The areas in which the Petitioner expects to elicit testimony from PaRR (or from its constituents) are specified in the list entitled "Areas Of Expected Testimony," which is attached hereto as "Attachment A."

XII.

The Petitioner seeks to depose PaRR not only to comply with Rule 13 of the Texas Rules of Civil Procedure (which requires a reasonable inquiry prior to filing the anticipated litigation), but also for purposes of judicial economy. There is a strong likelihood that the requested deposition would serve to eliminate some of the potential claims and possibly a defendant in the anticipated litigation.

XIII.

The Petitioner requests the court to order PaRR (and/or its constituents Dewberry and URS) to produce the documents specified in the List Of Documents To Be Produced, which is attached hereto as "Attachment B."

XIV.

The requested deposition may prevent a failure or delay of justice in an anticipated suit.

XV.

Rule 202.3 of the Texas Rules of Civil Procedure requires the service of this petition under Rule 21a at least 15 days before the court holds a hearing on this petition.

PRAYER

WHEREFORE, PREMISES CONSIDERED, the Petitioner asks the Court to set this



petition for a hearing and, after the hearing, to set the deposition of the Partnership for Response

and Recovery, or of that joint venture's constituents (i.e. Dewberry & Davis, LLC, and URS

Corporation), and to order the production of the documents listed in this petition.

Respectfully submitted,

Shimon Kaplan
State Bar No. 11095020

Mark J. Grandich
State Bar No. 08294850

Lone Star Legal Aid
1415 Fannin, Third Floor
Houston, Texas 77002
(713) 652-0077, ext. 1251
Fax (713) 652-3815
ATTORNEYS FOR DEFENDANT



## VERIFICATION OF
## CHARLIE JAMES DIAL

STATE OF TEXAS     §
          §
COUNTY OF ORANGE   §

    On this day, Charlie James Dial appeared before me, the undersigned notary public, and

after I administered an oath to him, upon his oath, he stated he read the Petition To Take

Deposition In Anticipation Of Litigation, that the facts in it relating to him are within his

personal knowledge, and are true and correct.

                CHARLIE JAMES DIAL

    SWORN TO and SUBSCRIBED before me by Charlie James Dial on the 5th day of
February, 2009.

                Notary Public in and for
                The State of Texas



## ATTACHMENT A
### AREAS OF EXPECTED TESTIMONY

1.      The identity and contact information for any current participants (other than Dewberry and URS) in the joint venture known as 'PaRR.'

2.      Excluding PaRR, the identity and contact information for any other company which PaRR believes to have a contract with FEMA to conduct home inspections under FEMA's Individuals and Households Program.

3.      An explanation of the type, nature and extent of the housing inspection services which PaRR (or any of its members) negotiated and contracted to perform for FEMA which authorized or which otherwise pertained to PaRR's on-site home inspections for damages caused by Hurricane Ike.

4.      A description of the procedures and protocols which FEMA expressly required PaRR (or its members or inspectors) to follow when scheduling, conducting or reporting on-site home inspections for damages caused by Hurricane Ike

5.      Excluding the procedures and protocols expressly required by FEMA, a description of all procedures and protocols which PaRR (or its members or inspectors) followed when scheduling, conducting or reporting on-site home inspections for damages caused by Hurricane Ike.

6.      A description of the standards, criteria and tests for property damage which FEMA expressly required PaRR (or its members or inspectors) to use when conducting or reporting on-site home inspections for damages caused by Hurricane Ike.

7.      Excluding the standards, criteria and tests expressly required by FEMA, a description of all standards, criteria and tests for property damage used by PaRR (or by any of its members or inspectors) when conducting or reporting on-site home inspections for damages caused by Hurricane Ike.

8.      A description of the procedures and protocols used by PaRR (or by any of its members or inspectors) when arranging, conducting or reporting a FEMA-required re-inspection of a home for damages caused by Hurricane Ike.

9.      A description of the manner in which FEMA trained, instructed, advised and informed PaRR as to FEMA's requirements for on-site home inspections of damages caused by Hurricane Ike.

10.     A description of the manner in which PaRR trained, instructed, advised and informed its inspectors as to FEMA's requirements for on-site home inspections of damages caused by Hurricane Ike.

11.     The qualifications of the individuals PaRR hired to be inspectors.



12.     A description of the manner in which PaRR paid its inspectors

13.     Testimony as to whether the Petitioner's home was inspected in a manner which properly, fairly and consistently applied FEMA's requirements for such inspections.



# ATTACHMENT B
## DOCUMENTS (WHICH INCLUDES ELECTRONIC DOCUMENTS) TO BE PRODUCED

1. For each contract with FEMA which authorized PaRR to conduct housing inspection services to assess or document damage caused by Hurricane Ike to the homes of people who applied to FEMA for emergency assistance:

    a.    A copy of that contract;

    b.    A copy of the documents given by FEMA to solicit PaRR to submit a bid, or to engage in competitive negotiations for, that contract;

    c.    A copy of the documents given by PaRR to FEMA in support of PaRR's bid, or PaRR's competitive negotiations, for that contract;

    d.    A copy of each document given by FEMA to PaRR which gives guidance, clarification or instruction as to the types of damage which should be assessed or documented during the housing inspections pursuant to the contract;

    e.    A copy of each document given by FEMA to PaRR which gives guidance, clarification or instruction as to the assessment or documentation of the cause of the damages (e.g. wind, flood, etc.) to the residences to be inspected pursuant to the contract;

    f.    A copy of each document given by FEMA to PaRR which gives guidance, clarification or instruction as to the assessment or documentation of the degree or extent of the damages (e.g. light, moderate, severe, etc.) to the residences to be inspected pursuant to the contract;

    g.    A copy of each document given by FEMA to PaRR which gives guidance, clarification or instruction as to the assessment or documentation of the habitability of the residences to be inspected pursuant to the contract;

    h.    A copy of each document given by FEMA to PaRR which gives guidance, clarification or instruction as to the assessment or documentation of the feasibility of repairing the residences to be inspected pursuant to the contract;

    i.    A copy of each document given by FEMA to PaRR which gives guidance, clarification or instruction as to the assessment or documentation of any deferred maintenance exhibited by the residences to be inspected pursuant to the contract;

    j.    A copy of each document given by FEMA to PaRR which gives guidance, clarification or instruction as to the assessment or documentation of any damages exhibited by the residences to be inspected pursuant to the contract which may have existed before Hurricane Ike; and

    k.    A copy of each form check list, form report, or other form which was given by FEMA to be used by PaRR' housing inspectors when inspecting or when reporting upon the residences to be inspected pursuant to the contract.

    l.    A copy of the curriculum (including each text books, training manuals, "how-to" pamphlets, or other instructional materials) for any training provided by FEMA to PaRR or its employees after February 1, 2007, concerning the procedures, protocols, standards and criteria to be used with respect to home inspections conducted under FEMA's Individual and Household Program.



2. With respect to the inspectors PaRR used to assess and document damage to homes caused by Hurricane Ike (regardless of whether the inspectors were employees or independent contractors):

a.    A copy of the job description(s) for such inspectors;

b.    A copy of PaRR's minimum qualifications for such inspectors;

c.    A copy of the form contract which PaRR used to contract with such inspectors;

d.    A copy of the curriculum (including each text book, training manual, "how-to" pamphlet, or other instructional material) used by PaRR after September 1, 2008, to train people to become such inspectors;

f.    A copy of each document distributed by PaRR to such inspectors which gives guidance, clarifications or instruction as to the types of damage to a residence which should be assessed or documented during a housing inspection;

g.    A copy of each document distributed by PaRR to such inspectors which gives guidance, clarification or instruction as to how to evaluate or determine the cause of any damage to a residence during a housing inspection (e.g. wind, flood, etc.);

h.    A copy of each document distributed by PaRR to such inspectors which gives guidance, clarification or instruction as to how to evaluate the degree or extent of damages to a residence during a housing inspection (e.g. light, moderate, severe, etc.);

i.    A copy of each document distributed by PaRR to such inspectors which gives guidance, clarification or instruction as to how to evaluate whether or not residence (or any part of a residence) is uninhabitable;

j.    A copy of each document distributed by PaRR to such inspectors which gives guidance, clarification or instruction as to how to evaluate whether or not a residence (or any part of a residence) is reparable;

k.    A copy of each document distributed by PaRR to such inspectors which gives guidance, clarification or instruction as to how to evaluate whether or not a residence (or any part of a residence) shows signs of deferred maintenance;

l.    A copy of each document distributed by PaRR to such inspectors which gives guidance, clarification or instruction as to how to evaluate whether or not the damage to a residence (or any part of that residence) existed before Hurricane Ike;

m.    A copy of each document distributed by PaRR to such inspectors which gives guidance, clarification or instruction as to how to evaluate whether or not pre-existing damage to a residence was exasperated by Hurricane Ike;

n.    A copy of each form checklist, form report and other form which PaRR required such inspectors to use, to consider or to complete when inspecting residences damaged by Hurricane Ike; and

o.    A print out of each computer screen generated by any computer program (including Nemesis) which would have been displayed to such inspectors while they conducted inspections of homes damaged by Hurricane Ike.

3. With respect to residences in Texas located within Orange, Jefferson, Chambers, Galveston and Harris Counties, please provide on a compact disc (CD), or in other electronic format, a searchable chart or spreadsheet which contains the following information for all inspection reports given by PaRR to FEMA concerning homes which PaRR inspected for damages allegedly caused by Hurricane Ike:

a.    The county and zip code of the inspected home;

b.      A line item description of the real and personal property which was assessed or documented at the inspected home;

c.      The quantity of damages to real and personal property at the inspected home;

d.      The level of damages to real and personal property at the inspected home;

e.      The type of damages to real and personal property at the inspected home;

f.      The cause of damages to real and personal property at the inspected home;

g.      The water-level caused by Hurricane Ike at the inspected home;

h.      The assessment (if any) that the inspected home is habitable (whether in whole or in part);

i.      The assessment (if any) that the damages to the inspected home were caused or aggravated by deferred maintenance;

j.      The assessment (if any) as to the feasibility of repairing the inspected home; and

k.      The assessment (if any) as to the estimated cost of repairing the inspected home.

l.      The date and time the inspections was carried out, and whether the homeowner was present during the inspection.

4. With respect to the Petitioner's damaged home:

a.      A copy of each document (including, but not limited to, reports, checklists, memoranda, statements, charts, and photographs) which was given by PaRR to FEMA (whether electronically conveyed or otherwise), and which also makes reference (whether directly or indirectly) to Charlie Dial, or to the inspected residence located at 3763 Victory Circle, Orange, Texas; and

b.      A copy of each document (including, but not limited to, correction forms and requests for additional information) which was given by FEMA to PaRR (whether electronically conveyed or otherwise), and which also makes reference (whether directly or indirectly) to Charlie Dial, or to the inspected residence located at 3763 Victory Circle, Orange, Texas.





State of Texas
County of Orange
    I, VICKIE EDGERLY, Clerk of the District Court in
and for Orange County, Texas, do hereby certify
that the above and foregoing is a true and correct
copy of the Original Hereof, as same was filed and
appears of record in my office.
    · Witness my official seat and signature of office
in Orange, Texas, this the 27 day of ____ FEB ____ 2009

VICKIE EDGERLY
Clerk of District Court,
of Orange County, Texas
by _____
JANET GREENE